UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

TIMOTHY A. HUTCHINSON, Individually    :    Civil Action No. 1:12-cv-01073-HB
and on Behalf of All Others Similarly Situated, :
                                       :    CLASS ACTION
                    Plaintiff,         :
                                       :    MEMORANDUM OF POINTS AND
        vs.                            :    AUTHORITIES IN SUPPORT OF
                                       :    PLAINTIFF'S MOTION TO ALTER OR
ANTONIO M. PEREZ, et al.,              :    AMEND THE COURT'S NOVEMBER 9,
                                       :    2012 JUDGMENT, OR FOR RELIEF FROM
                    Defendants.        :    SAID JUDGMENT, AND FOR LEAVE TO
_____ x    FILE [PROPOSED] SECOND AMENDED
                                            COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      Introduction.................................................................................................................1

II.     Procedural History .......................................................................................................2

III.    Judgment Should Be Altered so as to Grant Plaintiff Leave to Amend ...........................2

IV.     The Proposed Second Amended Complaint Adequately Alleges Scienter ........................6

        A.      Kodak's Subsequent Admissions Demonstrate Defendants Had Access to
                Facts Contravening Their Public Statements in September 2011...........................6

        B.      Kodak's Bankruptcy Pleadings Demonstrate Defendants Had Access to
                Facts Contravening Their Public Statements in November 2011 ..........................8

V.      New Confidential Witness Allegations Further Support the Proposed Second
        Amended Complaint's Allegations of Scienter for the Shortened Class Period ..............10

VI.     Defendants' Misrepresentations Are Not Protected by the Safe Harbor Provision
        of the PSLRA ...........................................................................................................11

VII.    Conclusion ...............................................................................................................16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
  544 F. Supp. 2d 199 (S.D.N.Y. 2008)..................................................................4

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
  551 F. Supp. 2d 210 (S.D.N.Y. 2008)................................................................15

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996).............................................................................4

*Foman v. Davis*,
  371 U.S. 178 (1962).........................................................................................3, 4

*In re 310 Assocs.*,
  346 F.3d 31 (2d Cir. 2003)..............................................................................2, 3

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004),
  *aff'd, Albert Fadem Trust v. Citigroup Inc.*, 165 Fed. App'x 928 (2d Cir. 2006)....................4

*In re Flag Telecom Holdings, Ltd., Sec. Litig.*,
  352 F. Supp. 2d 429 (S.D.N.Y. 2005)..................................................................4

*In re Initial Pub. Offering Sec. Litig.*,
  341 F. Supp. 2d 328 (S.D.N.Y. 2004)..................................................................4

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  No. 09 MD 2030 (LAP), 2011 U.S. Dist. LEXIS 35363
  (S.D.N.Y. Mar. 29, 2011)...................................................................................15

*In re Nortel Networks Corp. Sec. Litig.*,
  238 F. Supp. 2d 613 (S.D.N.Y. 2003)................................................................12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  187 F.R.D. 133 (S.D.N.Y. 1999) ..................................................................13, 14

*In re Vivendi Universal, S.A., Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003)..................................................................5

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011)............................................................13, 14

**Page**

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
   445 Fed. App'x 368 (2d Cir. 2011)............................................................6

*Kinsey v. Cendant Corp.*,
   No. 04 Civ. 0582 (RWS), 2004 U.S. Dist. LEXIS 23059
   (S.D.N.Y. Nov. 16, 2004)....................................................................4

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986)...................................................................4

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................6

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
   681 F.3d 114 (2d Cir. 2012)..............................................................3, 4

*Pozniak v. Imperial Chem. Indus. PLC*,
   No. 03 Civ. 2457 (NRB), 2004 U.S. Dist. LEXIS 19481
   (S.D.N.Y. Sept. 24, 2004)....................................................................4

*Preservation Coalition of Erie Cnty. v. Fed. Transit Admin.*,
   No. 99-CV-745S, 2006 WL 543788
   (W.D.N.Y. Mar. 3, 2006).....................................................................2

*Protter v. Nathan's Famous Sys., Inc.*,
   904 F. Supp. 101 (E.D.N.Y. 1995) ......................................................4

*Ret. Sys. v. MF Global, Ltd.*,
   620 F.3d 137 (2d Cir. 2010).......................................................11, 13, 14

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-5(c).........................................................................................11

Federal Rules of Civil Procedure
   Rule 15..............................................................................................1
   Rule 15(a)(2).....................................................................................3
   Rule 59(e)...................................................................................1, 2, 3
   Rule 60..........................................................................................1, 2
   Rule 60(b)(1)..................................................................................2, 3

**Page**

**LEGISLATIVE HISTORY**

 Private Securities Litigation Reform Act of 1995
Publ. L. No. 104-67, 109 Stat. 737 (1995)    *passim*

## I.    Introduction

In accordance with the Federal Rules of Civil Procedure 59(e) and 60, plaintiff hereby moves to alter the judgment entered by this Court on November 9, 2012 for reasons stated in its November 8, 2012 Opinion and Order granting defendants' motion to dismiss (the "MTD Order"). Plaintiff hereby also moves for leave to file a second amended complaint which narrows the case to focus on plaintiff's strongest allegations.

Plaintiff asserts that the Court erred particularly with respect to scienter for the alleged false and misleading statements and omissions made in the September 2011 through January 2012 time frame.  Thus, plaintiff requests that the Court reassess judgment and grant plaintiff leave to file the [Proposed] Second Amended Complaint for Violation of the Federal Securities Laws ("Second Amended Complaint" or "SAC") (attached hereto as Exhibit 1)[1] pursuant to Fed. R. Civ. P. 15 and Second Circuit precedent.  This proposed Second Amended Complaint shortens the Class Period by approximately eight months to the period from September 12, 2011 to January 19, 2012; streamlines the existing allegations; attaches the key bankruptcy pleadings supporting defendants' contemporaneous access to information contravening their public statements; adds new confidential witness ("CW") allegations; and more clearly alleges scienter in accordance with the Court's MTD Order issued November 8, 2012.

Here, an altered judgment is appropriate because the allegations support that defendants made materially false and misleading statements with recklessness during the shorter Class Period. Specifically, the proposed Second Amended Complaint adequately alleges that defendants were

---

[1]    Plaintiff also attaches as Exhibit 2, for the Court's convenience, a redline comparing the proposed Second Amended Complaint to the operative complaint.

reckless in their statements to the public by pleading that defendants' subsequent admissions in bankruptcy court demonstrate they had access to facts contravening their public statements when made.  As set forth below, plaintiff respectfully asserts that the Court erred by overlooking some and misinterpreting other admissions made in these bankruptcy filings.  The proposed Second Amended Complaint also includes newly discovered evidence from four former Company employees that corroborate plaintiff's alleged facts supporting scienter.

## II.        Procedural History

On July 2, 2012, defendants filed their motion to dismiss plaintiff's Amended Complaint for Violation of the Federal Securities Laws, filed on June 1, 2012.  Dkt. Nos. 22-24.  Plaintiff filed his opposition to defendants' motion on August 3, 2012.  Dkt. Nos. 30-31.  Defendants filed their reply on August 31, 2012.  Dkt. No. 34.  Oral argument on the motion to dismiss was held on September 27, 2012.  On November 8, 2012, the Court issued its MTD Order.  Dkt. No. 40.  Judgment was entered on November 9, 2012.  Dkt. No. 41.

## III.       Judgment Should Be Altered so as to Grant Plaintiff Leave to Amend

Rule 59(e) allows the Court to "alter or amend a judgment . . . no later than 28 days after the entry of the judgment."[2]  Moreover, under Rule 60, within a reasonable time, a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" for, among other things, "mistake," "newly discovered evidence" or "any other reason that justifies relief."  "Rule 60(b)(1) provides avenue to request that a district court correct legal errors in a judgment."  *Preservation Coalition of Erie Cnty. v. Fed. Transit Admin.*, No. 99-CV-745S, 2006 WL 543788 (W.D.N.Y. Mar. 3, 2006); *In re 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003).  In *In re 310 Associates*, the Second

---

[2]        *See also* Civil Local Rule 6.3.

Circuit affirmed its longstanding principle that Rule 60(b)(1) is available to correct factual and legal errors made by the parties or the court.  *In re 310 Assocs.*, 346 F.3d at 34-35.

Rule 15(a)(2) declares that "[t]he court should freely give leave [to amend] when justice so requires."  "[T]his mandate is to be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Indeed, courts require a sufficient basis for denial of leave to amend because the purpose of pleading under the Federal Rules of Civil Procedure is "'to facilitate a proper decision on the merits,'" not to set the stage for "a game of skill in which one misstep by counsel may be decisive to the outcome."  *Id.* at 181-82.[3]  As the United States Supreme Court recognized in *Foman*:

> ***If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim*** on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require be "freely given."

*Id.* at 182.  An "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *See id.* (on a Rule 59(e) motion, holding the Court of Appeals abused its discretion in refusing to permit plaintiff the right to amend).

This is consistent with the Second Circuit's recent decision in *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 115 (2d Cir. 2012).  In *Panther Partners*, the operative complaint was the third to have been considered by the district court.  *Id.* at 118.  After dismissal of the first amended complaint, Panther Partners moved for reconsideration and leave to replead, which the district court denied.  *Id.*  The Second Circuit vacated the district court's judgment denying

---

[3]      Citations are omitted and emphasis is added unless otherwise indicated.

Panther Partners' motion for reconsideration and for leave to replead, holding that "'it seems to us possible that [Panther Partners] could allege additional facts that [defendant] knew before filing the registration statement,'" and further urged the district court to "'consider all possible amendments,'" not just "'proposed amendments,'" in reassessing futility.  *Id.*

Moreover, the failure to plead fraud with sufficient particularity does not support a dismissal with prejudice.  *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  To the contrary, "[c]omplaints dismissed under Rule 9(b) are almost always dismissed with leave to amend." *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 235 (S.D.N.Y. 2008) (citing *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986)).  "Only 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of the amendment' will serve to prevent an amendment prior to trial." *Protter v. Nathan's Famous Sys., Inc.*, 904 F. Supp. 101, 111 (E.D.N.Y. 1995) (alteration in original) (quoting *Foman*, 371 U.S. at 182).

Further, the U.S. District Courts for the Southern District of New York have frequently permitted the filing of amended pleadings in securities fraud cases after granting motions to dismiss. *In re Flag Telecom Holdings, Ltd., Sec. Litig.*, 352 F. Supp. 2d 429, 469 (S.D.N.Y. 2005) (granting plaintiff leave to file fourth amended complaint); *Kinsey v. Cendant Corp.*, No. 04 Civ. 0582 (RWS), 2004 U.S. Dist. LEXIS 23059, at *57 (S.D.N.Y. Nov. 16, 2004) (granting plaintiff leave to file second amended complaint); *Pozniak v. Imperial Chem. Indus. PLC*, No. 03 Civ. 2457 (NRB), 2004 U.S. Dist. LEXIS 19481, at *24 (S.D.N.Y. Sept. 24, 2004) (granting plaintiff leave to file second amended complaint); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 382 (S.D.N.Y. 2004) (granting plaintiff leave to file second amended complaint), *aff'd*, *Albert Fadem Trust v. Citigroup Inc.*, 165 Fed. App'x 928 (2d Cir. 2006); *In re Initial Pub. Offering Sec. Litig.*, 341 F. Supp. 2d 328,

- 4 -

794788_1

351 (S.D.N.Y. 2004) (granting plaintiff leave to file second amended complaint); *In re Vivendi Universal, S.A., Sec. Litig.*, 381 F. Supp. 2d 158, 192 (S.D.N.Y. 2003) (Baer, J.) (granting plaintiff leave to file amended complaint).

Here, too, the Court should grant plaintiff leave to file the proposed Second Amended Complaint because plaintiff's motion is not the result of bad faith or dilatory motive but, rather, a good faith effort to substantively narrow and focus the complaint on the September 2011 through January 2012 false and misleading statements and omissions for which plaintiff has alleged defendants had access to contradictory facts. Plaintiff also seeks through amendment to address the Court's concern that there were no CWs alleged by adding new CW allegations that further support scienter for the narrowed Class Period. MTD Order at 10 ("I also note that Plaintiff does not allege . . . any confidential witnesses . . . .").

Plaintiff should not be faulted for not expressly seeking leave to amend in its opposition to the motion to dismiss, as doing so appeared to be prohibited by this Court's Individual Practices Rule 5.G. However, given that the Court erred in its MTD Order by overlooking certain of the alleged facts supporting scienter for the September 2011 through January 2012 time period, plaintiff respectfully requests that leave to amend be granted so he can streamline the allegations, making scienter more clear for the Court, and cure the deficiencies articulated in the dismissal order.

Further, granting plaintiff's motion to amend will not cause undue prejudice to defendants. It is early in the case, and there has been no discovery taken. Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), discovery has been stayed since the motion to dismiss was filed. Moreover, the proposed amendments merely streamline existing allegations, adding only CW allegations supporting facts already alleged and which were already known to and

in the possession of defendants.  Additionally, no trial date has been set, and there has been only one prior amendment.

## IV.   The Proposed Second Amended Complaint Adequately Alleges Scienter

In its MTD Order, the Court stated that securities fraud claims based on recklessness may survive a motion to dismiss where "'they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements.'"  MTD Order at 6 (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).  Citing to *Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 Fed. App'x 368, 370 (2d Cir. 2011), the Court ruled that such allegations "must specifically identify the reports or statements containing this information."  MTD Order at 6.

Here, as set forth in more detail below, the proposed Second Amended Complaint specifically identifies subsequent admissions by defendants and their bankruptcy counsel contravening defendants' September 2011 through January 2012 public statements. *See* ¶¶85-93;[4] SAC, Ex. A at ¶11, Ex. B at ¶¶34, 40-41 (describing with particularity the sequence of events leading up to Eastman Kodak Company's ("Kodak" or the "Company") bankruptcy filing on January 19, 2012).

### A.   Kodak's Subsequent Admissions Demonstrate Defendants Had Access to Facts Contravening Their Public Statements in September 2011

On September 26, 2011, Kodak reported that it was borrowing $160 million against its credit line.  ¶¶3, 24-27, 38, 43, 122.  Defendants misleadingly assured investors that the "purpose" of this loan was simply "to bridge timing differences between cash outflows and inflows."  ¶¶3, 26, 40.  However, Kodak's later revelations (¶78) show that, at the time the loan was taken, Kodak was

---

[4]    All paragraph ("¶" or "¶¶") references are to the proposed Second Amended Complaint, unless otherwise indicated.

facing a liquidity crisis caused by the fact that more than 70% of the Company's cash was tied up

overseas and unavailable to be repatriated – a material fact omitted altogether from defendants'

September disclosures.  ¶¶71-84.

On September 30, 2011, defendants publicly stated that Kodak had no intention of filing for

bankruptcy:

> ***Kodak is committed to meeting all of its obligations and has no intention of
> filing for bankruptcy***.  The company also continues to actively pursue its previously
> announced strategy to monetize its digital imaging patent portfolio.  Kodak remains
> focused on meeting its commitments to customers and suppliers, and on delivering
> on its strategy to become a profitable, sustainable digital company.

¶¶4, 25, 28, 48.

The declarations filed in the bankruptcy court by Kodak and its bankruptcy counsel, Lazard

Freres & Co. LLC ("Lazard"), demonstrate that defendants had access to facts showing these

statements were false when made.  SAC, Exs. A at ¶11 and Ex. B at ¶¶34, 40-41.  First, the

Declaration of Lazard Freres & Co. LLC Restructuring Group Director, Matthew J. Hart ("Lazard

Declaration"), Kodak's bankruptcy advisor, states that once Lazard was hired on July 13, 2011, it

then:

> ***[B]ecame clear*** that [Kodak's] U.S. liquidity was declining and might reach a critical
> level before a sale of the digital imaging patents could be completed.  ***Hence, on
> September 12, 2011***, Lazard's engagement was expanded to encompass a variety of
> possible strategic, financing and restructuring alternatives, including, if necessary, a
> restructuring through chapter 11.

SAC, Ex. A at ¶11; SAC, Ex. C.  Thus, even though Lazard's engagement was specifically expanded

by September 12, 2011 to include organizational restructuring under Chapter 11, two weeks later,

Chief Executive Officer Antonio M. Perez ("Perez") was still assuring investors that Kodak had "no

intention" of filing for bankruptcy.

The Court considered the Lazard Declaration and found that Kodak's retention of Lazard and subsequent expansion of that engagement to include bankruptcy did not alone contradict Perez's statements that Kodak was committed to meeting all of its obligations and had no intention of filing for bankruptcy.  MTD Order at 7.  However, the Court overlooked that while making the assurances that Kodak had "no intention" of filing for bankruptcy, and that it remained "committed to fulfilling all of its obligations," defendants misled investors by failing to tell them that: (i) most of their cash was tied up overseas and unavailable for use in the U.S. (¶¶71-84); and (ii) they were having difficulties finding a buyer for their IP portfolio, without which Kodak would not actually be able to fulfill all of its obligations.  ¶¶6, 111-113; Ex. B at ¶¶34, 41.

### B.    Kodak's Bankruptcy Pleadings Demonstrate Defendants Had Access to Facts Contravening Their Public Statements in November 2011

On November 3, 2011, Perez informed investors that his "optimism in [Kodak's] ability to complete the sale of [its] digital imaging patent portfolio [was] very high."  ¶¶29, 52, 85.  This is directly contradicted by Kodak's admission in its bankruptcy pleadings that in reality the "***cash flow from the licensing and sale of intellectual property [had] been delayed due to litigation tactics employed by a small number of infringing technology companies with strong balance sheets and an awareness of Kodak's liquidity challenges***."  ¶91; SAC, Ex. B at ¶¶34, 41.  With infringing technology companies engaging in litigation tactics delaying the sale of Kodak's IP, Perez had no business informing investors that his "optimism" in his ability to complete the sale was "very high." ¶¶29, 52, 91.  Indeed, as discussed above, the Lazard Declaration demonstrates that it "became clear" by September 12, 2011 that an IP sale might not happen before liquidity reached a "critical level."  Moreover, CWs 1 and 2 suggest that the Company hired Jones Day because it had been unable to execute a patent sale; thus, the difficulties were certainly known by September 30, 2011. ¶¶95-107.

Moreover, this Court overlooked in its MTD Order that, on November 3, 2011, defendant Perez also publicly assured investors that Kodak's cash projection was not dependent upon an IP sale: "***We are an asset rich company and we have many tools in our kit. Keep in mind that our expected year end cash position does not contemplate a new financing or the sale of our IP portfolio***." ¶52.

This statement suggesting that Kodak's cash position was ***not*** dependent on an IP sale for survival is blatantly contradicted by the statement in the Lazard Declaration suggesting that it had ***became clear*** between July 13, 2011 and September 12, 2011 that, absent a sale of Kodak's digital imaging patents, Kodak's liquidity might decline to a "critical level" (¶88; SAC, Ex. A at ¶11) and by the CW allegations.  ¶¶105, 113; *see also* ¶¶94-112.

This statement is also contradicted by Kodak's subsequent admission in bankruptcy court that revenue generated through the monetization of the digital portfolio had in fact been an "***integral part*** of the funding for Kodak's digital transformation," and that one of the precipitating factors causing Kodak's bankruptcy was its inability to execute the sale.  ¶¶108-114; SAC, Ex. B at ¶¶40-41.

Thus, in November 2011, Perez was still assuring investors that the Company did not need an IP sale or new financing in order to stay afloat (a practical impossibility),[5] when, in fact, Kodak had ***already*** hired restructuring advisor Lazard and made "clear" to Lazard that liquidity might reach a "critical level" before execution of a patent sale; expanded Lazard's engagement to include the

---

[5]     Defendants' April 2011 restructuring of Kodak's loan covenant to be rid of the clause requiring minimal levels of cash in the U.S. further supports a strong inference that defendants were well aware of the dangerously low levels of cash in the U.S. and of the dire need for a patent sale to infuse the Company with the much-needed cash.  ¶¶71-73.

possibility of bankruptcy and hired additional bankruptcy counsel Jones Day; and drawn on a $160 million credit line because more than 70% of the Company's cash was tied up overseas and unavailable.  ¶¶71-84.

**V.     New Confidential Witness Allegations Further Support the Proposed Second Amended Complaint's Allegations of Scienter for the Shortened Class Period**

In addition to seeking reconsideration of the narrower Class Period allegations supporting scienter held over from the amended complaint, plaintiff also seeks leave to amend to add new CW allegations bolstering the scienter allegations for the proposed narrowed time frame.  ¶¶94-113.  The proposed CWs include a finance director, a former business research manager in the Inkjet division and a technology and IP manager, all of whom were employed with Kodak in 2011.  *Id.* Specifically, the CW allegations support that:

- Emerging trends throughout 2011 showed that the Company's core inkjet/printer business was failing, and such information was communicated to executive management, including defendants, prior to the September 30, 2011 hiring of Jones Day (¶¶95-107);

- The July 2011 hiring of Lazard was internally regarded as an effort to look at reorganization to reduce costs and bureaucracy so the Company could respond to emerging trends; however, the September 30, 2011 hiring of Jones Day signaled that Kodak had tried and failed to avoid bankruptcy (¶¶99, 101, 104);

- Kodak management looked at a patent sale as an act of desperation to avoid bankruptcy (¶101);

- Jones Day was hired in September because Lazard and management had failed to sell the IP portfolio; executives began planning the bankruptcy at that time with Jones Day due to the failure to sell patents; and bankruptcy preparations could not have been completed within a month (¶¶99, 101);

- The Company's reduction in the investment in inkjets was internally viewed as "pulling the life-plug from inkjets and scuttling Kodak into bankruptcy" (¶¶103-107);

- Although Kodak executives were touting printer and ink sales as the business that would carry the Company through to its new digital base, internally employees wondered how this declining market could possibly replace a significant part of the hole left from dying film sales (¶109); and

794788_1

- Because the Company was so large and moved so slowly, there is no way it could have made a bankruptcy decision and prepared for it in just a month; preparations would have begun six months earlier.  ¶110.

These allegations, viewed together with plaintiff's allegations for the September through November 2011 period, raise a strong inference that defendants had access to information contradicting the false and misleading statements and omissions made from September 12, 2011 to January 19, 2012 to the effect that they had "no intention" of filing for bankruptcy, they had a high degree of confidence in Kodak's ability to execute an IP sale and that Kodak's cash position was not dependent on an IP sale in any event.

## VI.   Defendants' Misrepresentations Are Not Protected by the Safe Harbor Provision of the PSLRA

Defendants' purportedly forward-looking statements are not protected by the safe harbor provision of the PSLRA.  Under the PSLRA safe harbor provision, a forward-looking statement is inactionable if: (a) the statement is identified as forward-looking and is accompanied by meaningful cautionary language; or (b) plaintiff has failed to plead or prove that the statement was made with "actual knowledge" that it was false or misleading.  15 U.S.C. §78u-5(c); *see also Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd*., 620 F.3d 137, 141 (2d Cir. 2010).

In its MTD Order, the Court found that many of defendants' misstatements, "especially those regarding Kodak's digital transformation by 2012 and financial projections for 2011, are forward-looking statements squarely protected by the 'safe harbor' provision of the PSLRA."  MTD Order at 11.

However, many of the false and misleading statements alleged by plaintiff in the September through January time frame, are not forward-looking at all but rather are statements of current or historical conduct.  For example:

- *"The purpose of the revolving credit facility is to bridge timing differences between cash outflows and inflows, which is a common practice at many corporations."* (September 26, 2011).  ¶¶3, 26, 40.

- *"Kodak is committed to meeting all of its obligations and has no intention of filing for bankruptcy*.  The company also continues to actively pursue its previously announced strategy to monetize its digital imaging patent portfolio.  *Kodak remains focused on meeting its commitments to customers and suppliers, and on delivering on its strategy to become a profitable, sustainable digital company."*  (September 30, 2011).  ¶¶4, 25, 28, 48.

- "It is not unusual for a company in transformation to explore all options and to engage a variety of outside advisers, including financial and legal advisers.  *Jones Day is one of a number of advisers that Kodak is working with in that regard*."  (September 30, 2011).  ¶¶25, 48.

- "More than anything, *the results of this quarter* reflect our continued progress toward establishing digital growth businesses that will form the nucleus of a new Kodak."  (November 3, 2011).  ¶51.

- "First, as you know, under SEC rules companies are required to identify all potential risks that could impact business performance and results and to communicate various scenarios.  *These requirement statements shouldn't be misunderstood in any way as dampening my optimism in our ability to complete the sale of our digital imaging patent portfolio, which is very high*.  We have been successfully monetizing our IP portfolio for seven years and *we have both the value in the portfolio and the expertise in our team to execute this well*."  (November 3, 2011). ¶¶5, 51.

- "Second, to be clear, we outlined several things that we can fund our operations, including continuing our successful IP licensing strategy that we have had in place for years, the sale of assets, and other actions.  *We are an asset rich company and we have many tools in our kit.  Keep in mind that our expected year end cash position does not contemplate a new financing or the sale of our IP portfolio*."  (November 3, 2011).  ¶52.

- "In relation to the recent speculation in the market place about the future of Kodak, I want to note that *I have a high degree of confidence* in our ability to execute this plan.  We continue to be highly focused in completing our transformation to a digital, profitable, and sustainable company.  I want to emphasize as well that we recognize the importance of all of our stakeholders, including our customers and suppliers.  Importantly, *we have fulfilled and remained committed to fulfilling all of our obligations*."  (November 3, 2011).  ¶52.

These are statements of present and historical fact about the Company's liquidity and cash

position and do not qualify for protection under the PSLRA safe harbor.  *In re Nortel Networks*

*Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 629 (S.D.N.Y. 2003).  Likewise, such statements do not constitute "puffery" but are, rather, affirmative statements about the Company's present liquidity.  In truth, Kodak was desperate to build up its U.S. cash base because it had just $230 million left in the U.S. (¶78), a fact concealed from investors until November 2011, and efforts to execute an IP sale were frustrated because potential buyers were concerned about a fraudulent transfer and waiting for a better deal after Kodak entered bankruptcy – precisely the reasons Kodak had already hired Lazard and Jones Day for a potential Chapter 11 petition.  ¶¶104; SAC, Ex. A at ¶11; Ex. B. at ¶¶34, 41.

Because these statements are not forward-looking, neither the safe harbor provision nor the bespeaks caution doctrine applies.  Even as to those statements that have forward-looking elements – such as projections – neither the safe harbor provision nor the bespeaks caution doctrine precludes plaintiff's claims for two distinct reasons.

First, the focus of the proposed Second Amended Complaint is not on the projections themselves but on the present and historical problems defendants failed to disclose at the time they made those projections.  In *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011), defendants sought dismissal of claims that were based on purportedly forward-looking statements, including the following: "'It is also our objective to grow pro forma adjusted EBITDA at an approximate 35% compound annual growth rate through 2002.'"  *Id*. at 568.  Relying on the Second Circuit's recent distinction in *MF Global* that "'[a] statement may contain some elements that look forward and others that do not'" and that "'in each instance the forward-looking elements and the non-forward-looking are severable,'" *Vivendi*, 765 F. Supp. 2d at 569, Judge Holwell relied on plaintiffs' allegation that Vivendi Universal failed to disclose as a matter of present fact that the company was not actually envisioning anything close to the 35% EBITDA growth as a result of improved operations.  *Id.* at 569-70.  Citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D.

133, 141 (S.D.N.Y. 1999), the Court concluded that because "the misleading nature of the statement could be verified the moment it was made, and did not depend on any future events," defendants' statement(s) were not protected by the safe harbor.  *Vivendi*, 765 F. Supp. 2d at 570; *see also Oxford*, 187 F.R.D. at 141 ("[P]laintiffs point out that they are not relying on the falsity of Oxford's financial projections and estimates, but rather the defendants' failure to disclose historical and existing material facts about Oxford's computer problems and the impact of those problems on the reliability of the financial statements.  The safe harbor and bespeaks caution doctrines do not apply to these omissions."); *MF Global*, 620 F.3d at 142 (holding that the bespeaks caution doctrine does not apply to "alleged omissions of information concerning existing financial and operational difficulties").  Likewise, in the instant action, plaintiff bases his claims related to defendants' projections on their failure to disclose matters of present and historical fact, including that most of Kodak's cash was tied up overseas and unavailable (not disclosed until November 2011); that IP negotiations were failing; that Kodak's core inkjet business was failing; and that Kodak was already preparing for bankruptcy. *See, e.g.*, ¶¶95-107; Ex. A at ¶11; Ex. B at ¶¶34, 41; Ex. C.

Second, even if plaintiff had based his claims on the forward-looking aspects of the statements in question, the purported cautionary language on which defendants rely to avoid liability was not meaningful.  While these boilerplate warnings identify certain hypothetical problems – such as "changes in currency exchange rates, interest rates, and commodity costs" and "reliance on third party suppliers" – they fail to acknowledge the problems Kodak was already experiencing, as a present and historical matter, during the Class Period (all of which are explained in detail throughout the proposed Second Amended Complaint).  For example, the September warnings state nothing about the actual fact that more than 70% of Kodak's cash was tied up overseas and unavailable for use in the U.S.

- 14 -

When, finally, in November, a warning about restrictions on repatriating cash was inserted, it was meaningless given that Perez expressly told investors the cautionary statements were "required" and shouldn't be construed to dampen his optimism:

> First, as you know, under SEC rules companies are required to identify all potential risks that could impact business performance and results to communicate various scenarios. ***These requirement statements shouldn't be misunderstood in any way as dampening my optimism in our ability to complete the sale of our digital imaging patent portfolio, which is very high***. . . . I want to emphasize again that our 2012 cash performance from digital business will be significantly better than this year. That 2011 was the peak of our cash usage . . . . [And that] by the end of 2012, we're going to [be] this self-standing digital company . . . .

¶¶29, 52. The warnings were not meaningful because Perez negated them. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 772 (2d Cir. 2010) ("[D]efendants must demonstrate that their cautionary language was not boilerplate and conveyed substantive information."). As Chief Judge Preska recently observed, "'[i]f a party is aware of an actual danger or *cause for concern*, the party may not rely on a generic disclaimer in order to avoid liability.'" *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030 (LAP), 2011 U.S. Dist. LEXIS 35363, at *27 (S.D.N.Y. Mar. 29, 2011) (alteration in original) (quoting *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 226 (S.D.N.Y. 2008)).

Cautionary statements cannot be meaningful when the Chief Executive Officer is all but telling investors to ignore them. The Court mistakenly overlooked this in its consideration of the alleged false and misleading statements in November 2011. Accordingly, amendment of the judgment is appropriate. MTD Order at 11.

794788_1

## VII.    Conclusion

For the foregoing reasons, plaintiff respectfully requests that the Court grant plaintiff's

motion to alter or amend judgment and grant plaintiff leave to file a second amended complaint.

DATED:  December 7, 2012                           Respectfully submitted,

                                                   ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
                                                   AELISH M. BAIG
                                                   SUNNY S. SARKIS


                                                         s/ Aelish M. Baig
                                                   ————————————————
                                                         AELISH M. BAIG

                                                   Post Montgomery Center
                                                   One Montgomery Street, Suite 1800
                                                   San Francisco, CA  94104
                                                   Telephone:  415/288-4545
                                                   415/288-4534 (fax)
                                                   aelishb@rgrdlaw.com
                                                   ssarkis@rgrdlaw.com

                                                   ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
                                                   SAMUEL H. RUDMAN
                                                   DAVID A. ROSENFELD
                                                   MARIO ALBA JR.
                                                   58 South Service Road, Suite 200
                                                   Melville, NY  11747
                                                   Telephone:  631/367-7100
                                                   631/367-1173 (fax)
                                                   srudman@rgrdlaw.com
                                                   drosenfeld@rgrdlaw.com
                                                   malba@rgrdlaw.com

- 16 -

HOLZER HOLZER & FISTEL, LLC
MICHAEL I. FISTEL, JR.
MARSHALL P. DEES
200 Ashford Center North, Suite 300
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)
mfistel@holzerlaw.com
mdees@holzerlaw.com

Lead Counsel for Plaintiff

- 17 -

CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 7, 2012.

s/ Aelish M. Baig
AELISH M. BAIG

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: aelishb@rgrdlaw.com

# Mailing Information for a Case 1:12-cv-01073-HB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Aelish M Baig**
  aelishb@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **Jennifer Laurie Conn**
  jconn@gibsondunn.com,aarias@gibsondunn.com

- **Marshall Pierce Dees**
  mdees@holzerlaw.com

- **Jonathan Cobb Dickey**
  jdickey@gibsondunn.com

- **Michael Ira Fistel , Jr**
  mfistel@holzerlaw.com,cyoung@holzerlaw.com,cmoore@holzerlaw.com

- **Jennifer L. Gmitro**
  jgmitro@rgrdlaw.com

- **Gabrielle Frances Levin**
  glevin@gibsondunn.com,aarias@gibsondunn.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,aelishb@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sunny September Sarkis**
  ssarkis@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
E-107
Atlanta, GA 30338

David C. Walton
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301
```