UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                              :
TIMOTHY A. HUTCHINSON, individually and on                    :
behalf of a class of all others similarly situated,           :
                                                              :
                    Plaintiff,                                :
                                                              :
              -against-                                       :   12 Civ. 1073 (HB)
                                                              :
ANTONIO M. PEREZ, ANTOINETTE P.                               :   <u>OPINION & ORDER</u>
MCCORVEY,                                                     :
                                                              :
                    Defendants.                               :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**Hon. HAROLD BAER, JR., District Judge:[1]**

     Before the Court is a motion to dismiss a Second Amended Complaint ("SAC") brought by Defendants, Antonio M. Perez and Antoinette McCorvey (collectively, "Defendants"), against Lead Plaintiff Bret S. Jones ("Plaintiff") on behalf of all persons who acquired Eastman Kodak Company ("Kodak") securities during the period between July 26, 2011 and January 19, 2012. The SAC alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78(b), 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

     The Court previously dismissed Plaintiff's First Amended Complaint ("FAC") because Plaintiff's allegations of recklessness did not meet the strong inference of scienter as required under the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(b)(2)(A), (3)(A). *Hutchinson v. Perez*, 2012 WL 5451258, No. 12 Civ. 1073, at *7.[2] The Court held that "[b]ased on the alleged facts, the more compelling 'plausible, nonculpable' explanation is that Defendants failed to avoid Kodak's bankruptcy in January 2012 despite their best efforts to fund and complete a successful digital transformation throughout 2011." (S.D.N.Y. Nov. 8, 2012) (citing *Tellabs, Inc. v. Makors Issues & Right, Ltd.*, 551 U.S. 308, 324 (2007)). The Court

---

[1] Teisha Ruggiero, a second-year student at Brooklyn Law School and a Spring 2013 intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

[2] Further background to this case is provided in that prior Opinion, familiarity with which is assumed.

nonetheless granted Plaintiff's subsequent motion for a second chance and allowed Plaintiff to file a SAC "in the interest of justice," although it remained skeptical of Plaintiff's likelihood of success. *Hutchinson v. Perez*, No. 12 Civ. 1073, 2013 WL 93171, at *1 (S.D.N.Y. Jan. 8, 2013); Fed. R. Civ. P. 15(a)(2). For the reasons set forth below, Defendants' motion to dismiss the SAC is GRANTED.

## Discussion

The PSLRA requires the Court to dismiss the complaint if the alleged facts do not give rise to "a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(a), (3)(A). A complaint may satisfy the scienter requirement by alleging facts that either: (1) show the defendants had motive and opportunity to commit the fraud; or (2) constitute strong circumstantial evidence of conscious misbehavior or recklessness. *ATSI Commc'ns. Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

The SAC, like the FAC, relies on the theory of recklessness. *See* Pl.'s Opp. 8, 10. This Circuit defines recklessness as "conduct which is highly unreasonable" and which represents "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). "[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements," but *Id.* However, "such an allegation must specifically identify the reports or statements containing this information." *Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011) (citation and internal quotation marks omitted). The Second Circuit has also placed "several important limitations . . . based on reckless conduct." *Novak*, 216 F.3d at 309. First, "'fraud by hindsight' . . . allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Id.* Second, "as long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." *Id.* Furthermore, under the "safe harbor" provision of the PSLRA, 15 U.S.C. § 78u-5(i)1(A),(B), "the scienter requirement for forward-looking statements is stricter than for statements of current fact . . . . liability for the former attaches only upon proof of

2

*knowing* falsity [as opposed to recklessness]." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773 (2010) (emphasis added).

The Court previously found Plaintiff's allegations of recklessness in the FAC insufficient because it failed to allege that: "(1) specific contradictory information was available to the defendants (2) *at the same time* they made their misleading statements." *Hutchinson*, 2012 WL 5451258, at *8 (quoting *In re PXRE Group, Ltd.*, *Sec. Litig.*, 600 F.Supp.2d 510, 536 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Group Ltd.*, 357 F. App'x 393 (2d Cir. 2009)) (emphasis in original).  This time, Plaintiff attempts to overcome such deficiencies by: (1) adding allegations based on two pleadings filed by an ad hoc committee of creditors in Kodak's bankruptcy case ("Bankruptcy Pleadings") and allegations by four Confidential Witnesses ("CWs"), who are former Kodak employees; (2) shortening the class period from one year to the period between July 26, 2011 and January 19, 2012; and (3) removing two Defendants. *See* SAC ¶¶ 1, 15-16, 89-120.  Specifically, Kodak's creditors state in the Bankruptcy Pleadings that they: (1) planned to take action in October 2011 in response to the company's "potential restructuring;" and (2) retroactively opined that Kodak had been heading towards bankruptcy for "quite some time." *Id.* ¶¶ 98, 99. The four CWs allege in substance that: (1) Defendants were informed that the company's print/inkjet business was failing before Jones Day was hired on September 30, 2011; (2) Kodak's reduced investment in inkjet and Jones Day hiring was "internally viewed as pulling the life-plug from inkjets and scuttling Kodak into Bankruptcy;" (3) data throughout 2010 and 2011 showed ink and inkjet sales were declining; (4) Kodak would have needed more than a month to prepare for bankruptcy; and (5) the sale of Kodak's digital imaging portfolio was critical for Kodak to remain solvent. *Id.* ¶¶ 101-120. Taken in their totality, however, all of the above statements fail to show that Defendants knew, or should have known, that their public statements were misleading at the time they were made, and perhaps, more importantly, none of the statements note that the information was at a time and place where Defendants were present.

Plaintiff once again alleges that Defendant Perez misled investors in July 2011 when he said "with the best data we have, we feel very comfortable with the level of cash we have and we feel very comfortable with the level we will have at the end of the year." *Id.* ¶ 40. Plaintiff claims that this statement was made recklessly because 70 percent of Kodak's cash was "tied up" overseas (and therefore unavailable to fund domestic operations), and because Kodak had just

renegotiated an Amended and Restated Credit Agreement. *Id.* ¶¶ 25, 35, 49(a), 52(c), 75-77.  As I observed before, Kodak's cash information was publically available, and Kodak informed investors in its 2010 10-K and 2011 10-Q filings of the risk that Kodak would be unable to repatriate cash to fund its continuing operations. *See* Levin Decl. Exs. H, I, K. Moreover, as I held in my prior Opinion of November 8, 2012, words like "comfortable" are expressions of corporate optimism and puffery "too general to cause a reasonable investor to rely upon them." *See Hutchinson*, 2012 WL 5451258, at *8.

Similarly, the SAC fails to support Plaintiff's argument that Defendants were reckless on September 26, 2011 when they stated that the "purpose" of the $160 million loan was "to bridge timing differences between cash outflows and inflows." SAC ¶¶ 4, 46. Although Plaintiff argues that the purpose of the loan was really to hide a liquidity crisis, I have failed to find support in the record for such a conclusory statement.  Courts have dismissed analogous complaints as "fraud by hindsight" because they were filed after a company's bankruptcy based on the conclusory allegation that the defendant should have been aware, as in *Rombach v. Chang* where the Circuit rejected an inference of recklessness based on an allegation of "a liquidity crisis during the relevant period" because the Circuit said "Plaintiffs do not allege facts and circumstances that would support an inference that defendants knew of specific facts that are contrary to their public statements." 355 F.3d 164, 176 (2d Cir. 2004). *See also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994); *Gissin v. Endres*, 739 F. Supp. 2d 488, 513 (S.D.N.Y. 2010).

Plaintiff again argues that Perez's comment on September 30, 2011 that Kodak had "no intention of filing for bankruptcy" was misleading and reckless because it had hired Jones Day, a firm known for its bankruptcy expertise, to discuss possible company restructurings that included a Chapter 11 bankruptcy filing. SAC ¶¶ 5, 51. But Kodak's hiring of Jones Day was public information that was readily acknowledged by the company, *id.* ¶ 50, and discussions about restructuring is hardly the same as the company's decision to file for bankruptcy.  None of the CW statements indicate that Kodak had specific *present* plans to file for bankruptcy, or that Defendants had knowledge of any such plans at the time they made their statements. The statement that Kodak's creditors also took action in response to Kodak's potential restructuring, *id.* ¶ 98, or that the ad hoc committee of creditors retroactively asserted during the bankruptcy proceedings that Kodak "had been travelling a path toward Chapter 11 for quite some time," *id.* ¶

99, certainly does not show that Defendants had knowledge that Kodak was going to file for bankruptcy as early as September 30, 2011. *See Hutchinson,* 2012 WL 5451258, at *5 (finding that Kodak's earlier consideration of bankruptcy as an option did not contradict Defendants' statement that Kodak had "no intention" of filing for bankruptcy); *cf. SRM Global Fund Ltd. P'ship v. Countrywide Fin. Corp.*, 2010 WL 2473595, at *11 (S.D.N.Y. June 17, 2010) (statements denying bankruptcy rumors were not false or misleading where the plaintiff failed to sufficiently allege that bankruptcy was the only option at the time the defendants made the denials).

CW statements also fail to support Plaintiff's contention that Defendant Perez's statements on November 3, 2011—that "[m]ore than anything, the results of this quarter reflect our continued progress toward establishing digital growth business that will form the nucleus of a new Kodak," that Kodak's "cash position does not contemplate a new financing or the sale of [its] IP portfolio," and that he had a "high degree of confidence in [Kodak's] ability to execute this plan"—were reckless. SAC ¶¶ 6, 55, 56.  Plaintiff argues that Perez's statement about digital growth business is contradicted by CW1, who alleges that its inkjet business was "missing forecasts" throughout 2011, *id.* ¶¶ 102-109, and CW2, who states that the decision to reduce investment in the inkjet business was viewed internally "as pulling the life-plug from inkjets and scuttling Kodak into Bankruptcy," *id.* ¶ 113.  According to Plaintiff, Perez also had no basis for his "confidence" in Kodak's IP sales, since CW3 and CW4 state that potential buyers were nervous about Kodak becoming insolvent, and that the sale of Kodak's digital imaging portfolio was critical for Kodak to remain solvent. *Id.* ¶¶ 115, 120.  However, reading Perez's statement in the context of the stark warnings provided in Kodak's 10-Q on the same day—that "[t]he Company's ability to continue its operations . . . within the next twelve months is dependent upon the ability to monetize its digital imaging patent portfolio through a sale or licensing of the relevant patents and/or the successful execution of the alternative actions" and that "as of September 30, 2011 cash balances held outside of the U.S. are generally required to support local country operations and are therefore not available for operations in other jurisdictions," Levin Decl. Ex. K, at 47—it is difficult to construe Perez's statement as anything other than a non-actionable expressions of corporate optimism. *See Hutchinson*, 2012 WL 5451258, at *8.  Indeed, Perez explicitly characterized his statements as *optimistic* given Kodak's serious disclosures on the same day: "These requirement statements [on Kodak's liquidity position and status of IP

5

sale] shouldn't be misunderstood in any way as dampening my optimism in our ability to complete the sale of our digital imaging patent portfolio, which is very high." SAC ¶ 56. CW statements also support Perez's statement about the digital transformation to the extent that they state that Kodak, throughout 2011, pursued its investment strategy in the inkjet business despite the mounting financial difficulties and began to reduce investment only very late in the year, at the time Jones Day was hired, on September 30, 2011. *Id.* ¶¶ 106, 113. Furthermore, potential buyers' increasing nervousness about Kodak's solvency explains why Kodak was ultimately unable to sell the IP portfolio in time, and without more, the difficulties in negotiations cannot be the basis for finding Perez's statement, couched on his optimism and in the context of Kodak's thorough financial disclosure, reckless. *See Hutchinson,* 2012 WL 5451258, at *6.

Contrary to Plaintiff's contentions, the Court cannot combine several insufficient allegations of scienter and, taken together, construct "strong inference" of recklessness. *See Malin v. XL Capital, Ltd.,* 321 F. App'x 400, 402 (2d Cir. 2009) (holding that "the combined effect of the [insufficient] allegations [do not] form a *strong* inference of scienter"). As I noted before, the more compelling inference on the record before me is that Defendants properly disclosed relevant information to the public while Kodak was struggling to avoid bankruptcy and that Defendants' best efforts did not materialize.

## Conclusion

I have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is instructed to close the motion and remove the case from my docket.

**SO ORDERED.**

New York, New York
April 25, 2013

_____
Hon. Harold Baer, Jr.
U.S.D.J.